(96 App. Div. 143.)

KING v. ASHLEY.

(Supreme Court, Appellate Division, Third Department. June 30, 1904.)

1. CONTEMPT—CONFIDENTIAL COMMUNICATIONS TO ATTORNEY.

In a proceeding by an executor for discovery of assets, one who was an attorney of deceased may not, under Code Civ. Proc. § 835, prohibiting disclosure of a communication of a client to his attorney, which applies only to confidential communications, and is for the purpose of protecting the client, refuse to testify to his knowledge and information in regard to the will of another under which deceased was a beneficiary, and the property thereby disposed of, to enable the executor to reach it, on the ground that he obtained his knowledge from deceased while acting as his attorney, or ascertained the facts while carrying on an investigation in that capacity at deceased's direction.

Appeal from Surrogate's Court, Warren County.

In the matter of the application of H. Prior King, executor of William Moore, deceased, for a discovery. From an order and decree adjudging Eugene L. Ashley guilty of contempt of court for refusal to answer certain questions as a witness therein, he appeals. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Henry W. Williams, for appellant.
Edward M. Angell, for respondent.

HOUGHTON, J. The appellant is a practicing attorney, and William Moore, at times during his life, was his client. Upon his death Moore left a will, which has been duly admitted to probate, by which,

amongst other provisions, he bequeathed to his executor, in trust, the reversionary or contingent interest to which he claimed to be entitled under the will of one William Van Rensselaer, deceased. It is alleged that this interest amounts to a large sum, and forms the larger portion of his estate. The executor being unable to ascertain where the will of William Van Rensselaer was probated, or its provisions, or where the property bequeathed or devised under it is located, or in whose custody it is, or its amount or character, or the interest of Moore therein, instituted proceedings in the Surrogate's Court for the discovery of assets, and subpœnaed the appellant to testify thereon. A series of questions was put to him as to his knowledge and information with respect to where the will of William Van Rensselaer was probated, where William Van Rensselaer lived in his lifetime, who were the executors of the will, where the real or personal property is situated, provisions of the will so far as it related to Moore, the approximate value of Moore's interest, who the life tenant was, if any, and his place of residence. All of these he declined to answer on the ground that he obtained his knowledge and information from Moore while he was acting as his attorney, or ascertained the facts while carrying on an investigation in that capacity at Moore's direction. The court directed him to answer, and upon his refusal adjudged him guilty of contempt, imposing a fine, and directing that he be imprisoned until he should answer as directed.

We think the court was clearly right in directing the witness to answer all of the questions for refusal to answer which the appellant was adjudged guilty of contempt of court. The appellant testified that Moore did not tell him where the Van Rensselaer will was probated, but that he obtained information under Moore's employment and from facts given by him. The knowledge or information called for by all the questions relates not necessarily to confidential communications made by Moore to the appellant, but rather to knowledge obtained from outside sources. The prohibition of section 835 of the Code of Civil Procedure is against the disclosure of a communication made by a client to his attorney, or the advice given thereon. Although the word "confidential" is not used, the statute is but an enactment of the common-law rule, and only those communications which are confidential are prohibited from disclosure. Smith v. Crego, 54 Hun, 25, 7 N. Y. Supp. 86; Hurlburt v. Hurlburt, 128 N. Y. 420, 28 N. E. 651, 26 Am. St. Rep. 482; Dehony v. Lacy, 168 N. Y. 224, 61 N. E. 255. Hence, communications made by a client to an attorney in the presence of a third person, or by various parties in controversy to a common attorney, or for the purpose of being communicated to a third person, are not privileged, because they lack the element of being confidential. People v. Buchanan, 145 N. Y. 1, 39 N. E. 846; Whiting v. Barney, 30 N. Y. 330, 86 Am. Dec. 385; Rosseau v. Bleau, 131 N. Y. 177, 30 N. E. 52, 27 Am. St. Rep. 578. Every fact which an attorney may learn in the course of the prosecution of the business of his client does not become confidential, and so come within the inhibition of the statute. Information derived from other persons, or other sources, although obtained while acting as attorney, is not privileged. Crosby v. Berger, 11 Paige, 377, 42 Am. Dec. 117. He cannot refuse to identify his client

or prove a deed executed by him, or his handwriting. Coveney v. Tannahill, 1 Hill, 33, 37 Am. Dec. 287. Nor can he refuse to produce a document delivered by his client to him. Mitchell's Case, 12 Abb. Prac. 249, 262; Jones v. Reilly, 174 N. Y. 97, 66 N. E. 649. What the appellant learned in his search for the court in which the Van Rensselaer will was probated, what the will contained, what the provision for Moore was, and who the life tenant, if any, was, and where he resided, was not privileged under the statute, even if the investigation was instituted by Moore's direction. Nor would they be privileged if those facts were communicated to the appellant by Moore himself. The spirit of a law must not be lost sight of in pursuing its letter. The rule grew up under the common law, and was subsequently incorporated into a statute to protect the client; not to harm him or his property interests. Formerly parties could not testify in their own behalf. They could not with safety confide in an attorney as to the weakness of their case, or communicate to him all the facts relating thereto, if the opposite party could call him as a witness, and prove the client's admissions. Hence, for the purpose of encouraging the employment of attorneys, and thus facilitating the business of the courts, the rule was adopted prohibiting the attorney from testifying to confidential communications made by his client to him. When this prohibition was removed, and the party allowed to give testimony in his own behalf, because of its manifest fairness, and to encourage persons needing professional advice to disclose freely the facts in reference to their cases without fear that such facts might be made public to their disgrace or detriment, by their attorney, the rule was still retained. Whiting v. Barney, supra; Hurlburt v. Hurlburt, supra. Through whatever change of situation the rule has passed, its object has been to protect the client, and for his good. Although Moore is dead, his estate stands in his place. The questions called for no answer which can disgrace his memory or prejudice the financial interests of his estate. On the contrary, if the appellant has any knowledge or information with respect to the location and character of the Van Rensselaer estate and the rights of Moore therein, a disclosure of such knowledge and information may be of great benefit. A man's estate might consist wholly of buried treasure, or of money deposited in some distant vault, and he might die bequeathing it, but leaving no memorandum as to its location. An attorney to whom had been told, even in a professional capacity, the place of burial or deposit, could not refuse to disclose his information for the benefit of the estate. Neither the spirit nor the letter of the rule permits a different construction. The appellant should have answered the questions propounded to him, and have given such knowledge and information as he had with respect to the Van Rensselaer estate which might tend to benefit that of Moore.

Any question as to whether this appeal should come before us in the form of a certiorari, or upon appeal from the order, is expressly waived by the respondent, and we have decided the appeal upon the merits without considering that subject. The order and decree should be affirmed, with $10 costs and disbursements. The order of affirmance should specify a time when the appellant may appear before the

surrogate and pay the fine and answer the questions, and thus purge himself of that part of the order directing imprisonment, if he shall so elect.   All concur.