GEORGE H. REPPERT and MARY REPPERT HYDE, Plaintiffs, *v.* MARY EVA GRIER HUNTER, Individually and as Trustee of the JAMES S. AND MARGARET M. PATTERSON FUND, Defendant.

(Supreme Court, Erie Equity Term, February, 1919.)

Trusts — when a parol trust or trust ex maleficio are not established — evidence.

Assignments — ratification of — action to impress a trust upon certain personal property — consideration — when judgment for dismissal of complaint upon the merits granted.

A trust *ex maleficio* can be established only by evidence which is clear, definite and unequivocal in character.

A parol trust cannot be engrafted upon a written instrument transferring certain personal property, which is not only absolute in its terms but distinctly and unequivocally declares the purpose and intention of the transferrors, in the absence of some proof of fraud, mistake or undue influence.

In an action by residuary legatees to impress a trust upon certain personal property which the testator and his wife by a written .assignment transferred to defendant, his favorite niece, who was his executrix, lived in his family and out of the income of the assigned property supported testator's widow so long as she lived, which assignment was ratified and confirmed by the heirs at law of the testator, evidence considered, and *held*, that under said assignment defendant took the entire beneficial interest in said personal property for value received and in consideration of love and affection, and judgment in her favor for a dismissal of the complaint upon the merits with costs is granted.

ACTION to impress a trust upon personal property.

Edward C. Randall (Benjamin S. Dean and Robert K. Aiken, of counsel), for plaintiffs.

Kenefick, Cooke, Mitchell & Bass (James McCormick Mitchell, of counsel), for defendant.

BISSELL, J.   The plaintiffs are seeking to impress a trust for the joint benefit of themselves and the defendant upon certain personal property which was conveyed by James S. Patterson and Margaret M. Patterson, his wife, to the defendant.  The trust is claimed to be a constructive trust or a trust *ex maleficio*.

It appears that the plaintiffs, George H. Reppert and his sister Mary Reppert Hyde, a nephew and niece of Margaret M. Patterson, came to live with her and her husband, James S. Patterson, at Jamestown, N. Y., as infants, and were educated and maintained by them in their home.  The defendant Mary Eva Grier, who is now Mary Eva Grier Hunter, was also a niece of Margaret M. Patterson.  She came to reside permanently with them in 1896, three years prior to the death of James S. Patterson.  Thereupon all of these persons lived together as one family, and were supported by the uncle and aunt.  The defendant was thereafter made the executrix of the wills of both the uncle and aunt, and took the responsibility of managing the affairs of the household during the lifetime of James S. Patterson who died in 1899, and of Margaret M. Patterson until her death in 1913.

The defendant claims the absolute ownership of the personal property in question pursuant to the provisions of a conveyance which was in the handwriting of James S. Patterson, and duly executed by him and Margaret M. Patterson, his wife, and reads as follows:

" JAMESTOWN, N. Y., *Jan.* 10, 1899.

" For value received we, in consideration of love and affection, hereby assign to Mary Eva Grier all our stock in Empire Worsted Mills (576) shares of stock, and all our bonds in Empire Worsted Mills, and all Empire Worsted Mills notes, and all J. W. Doubleday and Mrs. J. W. Doubleday notes.  Now we direct the respective officers of said Empire Worsted Mills to

transfer said stock and bonds and notes to the said Mary Eva Grier, and all our stock in the Union Trust Company, and direct the officers of said company to transfer the same to Mary Eva Grier.

" In testimony whereof we have hereunto set our hand and seal the day and year aforesaid.

　　　　　　　　" J. S. PATTERSON [L. S.]
　　　　　　　　" MARGARET M. PATTERSON [L. S.]
" Witness:
　　" JEAN BELL GRIER."

Upon the death of James S. Patterson, April 7, 1899, this paper was found in the family safe inclosed in an envelope upon the back of which was written " Mary Eva Grier." All of the certificates of stock mentioned in this transfer were duly indorsed either by Mr. or Mrs. Patterson, so that the defendant was in a position to secure their transfer to herself on the books of the respective companies, and they were also included in the same envelope with the instrument of transfer.

On February 26, 1898, Mr. Patterson executed his last will and testament, by the terms of which he gave all his real and personal estate to his wife for and during the term of her natural life, making three separate devises to the defendant Mary Eva Grier and appointing her executrix of his will. By the terms of this will as construed by the surrogate of Chautauqua county, Mrs. Patterson took a life estate in all of her husband's real and personal property, with the exception of the specific devises to the defendant, and in addition to this life estate she took absolutely under the Statute of Distribution one-half of all his personal property plus the sum of $2,000, whereas his next of kin took the residue of his personal estate in remainder, that is, subject to Mrs. Patterson's life estate.

Thereafter after the death of James S. Patterson, and on the 13th day of April, 1899, there was executed by his brothers and sisters, and delivered to the defendant, an instrument reading as follows:

"*April 13th,* 1899.

"WHEREAS, J. S. Patterson and Margaret M. Patterson in the lifetime of J. S. Patterson, to wit, on January 10th, 1899, as appears by the assignment hereto attached, did place in the hands of Mary Eva Grier bonds, stocks, notes and securities mentioned in the said assignment, with directions to hold them for the persons as directed by him, now in order to enable the officers of said corporations to transfer said stocks and securities we do hereby authorize the proper officer or officers of the corporations, associations or companies above mentioned, to transfer the said mentioned stocks standing on the books of the said companies, corporations or associations in the name of J. S. Patterson or Margaret M. Patterson, or either or both of them, to the extent above indicated, to Mary Eva Grier, the person named in said assignment, and we do hereby ratify the said assignment thereto attached and so made by the said J. S. Patterson and M. M. Patterson of the stocks, bonds, notes and securities mentioned in the said assignment.

" Witness our hands and seals the day and year above written, to wit, April 13th, 1899.

"(Signed) J. C. PATTERSON [L. S.]
" MARY J. PATTERSON [L. S.]
" ORRIN JAMES PATTERSON [L. S.]
" I. N. PATTERSON [L. S.]
" MELISSA B. PORTER [L. S.]
" JULIA PATTERSON [L. S.]
" MARGARET PATTERSON [L. S.]
" MELISSA BAILEY [L. S.]
" ELIZABETH DAVIDSON [L. S.]

There is no dispute but that this last mentioned instrument was executed by Mr. Patterson's brothers and sisters and delivered to the defendant. After it had been delivered to her it would seem that she saw the recitation therein implying some sort of a trust, and believing that this was contrary to the fact she immediately took the matter up with her attorney, Harry R. Lewis, who went to Pittsburg and saw Joshua Patterson, the representative of all of James S. Patterson's next of kin, who thereupon at Mr. Lewis' request executed for himself individually and as attorney in fact for his bothers and sisters another instrument under the same date, which reads as follows:

"JAMESTOWN, N. Y., *April 13th*, 1899.

"WHEREAS J. S. Patterson in his lifetime, to wit, on January 10th, 1899, did transfer, assign and deliver to Mary Eva Grier all of his stocks in and bonds of the Empire Worsted Mills of Jamestown, N. Y., and his stock in the Union Trust Company of Jamestown, N. Y., now, therefore, we as heirs at law of said J. S. Patterson do hereby ratify and confirm said assignment, transfer and delivery and all transfers of stocks that may hereafter be made on the books of said corporations by the said Mary Eva Grier, the owner thereof.

"Witness our hands and seals the day and year above written."

[Signed by J. C. Patterson individually and as attorney in fact.]

It is clear that no parol trust can be engrafted on an instrument of the character of this transfer, which is not only absolute in its terms, but which distinctly and unequivocally declares the purpose and intention of the transferrors, without some proof of fraud, mis-

take or undue influence, and there is no such proof in this case.

It appears that following the taking possession of the securities in question, and during the years from Mr. Patterson's death to Mrs. Patterson's death, the defendant paid over to Mrs. Patterson the greater portion of the income that she received from the securities above referred to, the payments so made by her amounting to the sum of $93,683.80, all of which. moneys were used for the support and maintenance of Mrs. Patterson and the plaintiffs and the defendant as one family living together. The claim is now made by the plaintiffs that the trust alleged with reference to the personal property transferred to the defendant is evidenced by the defendant's payments to Mrs. Patterson of the income of the securities assigned to the defendant for this period of more than ten years after Mr. Patterson's death, and it is argued that there must have been a legal obligation to make these payments or the payments would not have been made. This question has already been presented to and determined by the surrogate of Chautauqua county, who pointed out that it is at least equally as probable under all of the circumstances proved that these payments were purely voluntary and made out of a sense of gratitude, as the defendant herself testified, and that they were continued so long as Mrs. Patterson had the additional expense of the education of the plaintiffs.

In 1913 the defendant, as the executrix of James S. Patterson's estate, Mrs. Patterson's life estate in her husband's property having then terminated, filed her account in the office of the surrogate of Chautauqua county, and a citation was issued to the next of kin, who filed objections to her account as such executrix November 25, 1913, for the purpose of surcharging the

account with certain shares of the stock of the Empire Worsted Mills and the Union Trust Company, the shares of stock mentioned in the instrument of transfer, and thereupon the plaintiffs as residuary legatees under the last will and testament of Margaret M. Patterson were granted the right to intervene and protect their interests, and this proceeding eventuated in a decision that the instrument of transfer dated January 10, 1899, and the securities mentioned therein were delivered by Mr. and Mrs. Patterson to the defendant to be her individual property, and that the transaction constituted a completed gift *inter vivos.* The record of the Surrogate's Court is in evidence before this court. The surrogate in his review of the facts and answering the plaintiffs' claim that no such gift was made as indicated in the instrument of transfer says: '' The donee was the testator's favorite niece. He had no children. She was the one whose business judgment he relied upon and in whom he had confidence. He had made her executrix of his will. He had made substantial gifts to her by his will. This property was not nearly so valuable then as it afterwards became although it was a substantial gift even at that time. Besides his wife she was the only one to whom he gave anything in his will. She was unmarried and lived in his family. He felt that she would make a correct use of the gift, and his confidence in this regard was justified by her later conduct, for as long as her aunt (testator's widow) lived this favorite niece remained with her, and supported her out of the income from this gift. But it all went through her private bank account and there was no indication that she was handling these funds as a part of the estate. The stocks were transferred to her individual name soon after testator's death. By exhibits 2 and 3 the next of kin recognized the gift and placed their seal

of approval upon it. They did this because at the time they believed the gift had been made and that it was just. Testator may have had some reason for not advertising the gift, and while he continued apparent owner of the stocks on the books of the various corporations he acted the part of owner.''

My study of the evidence produced on this trial leads me to agree with the views of the surrogate as expressed in his opinion, and I am unable to find any evidence which is convincing and possessed of the probative force necessary to establish the existence of the trust as claimed by the plaintiffs.

It appears that on the 28th day of June, 1913, Margaret M. Patterson died after receiving the constant care of the defendant for a period of seventeen years, leaving a last will and testament executed on the 23d day of January, 1908, by which she bequeathed to the defendant all of the income from her estate for a period of two years after her death, making two specific bequests to the defendant and a number of other relatives, and then devised and bequeathed her residuary estate, not exceeding the sum of $40,000, to the plaintiff George H. Reppert, and the residuary estate in excess of the sum of $40,000 to the plaintiff George H. Reppert and the plaintiff Mary Reppert Hyde share and share alike. It is undisputed that Mrs. Patterson's residuary estate amounted to $133,-550, of which the plaintiff George H. Reppert received from the defendant as executrix the sum of $86,775 and the plaintiff Mary Reppert Hyde the sum of $46,775. It is thus apparent that Margaret M. Patterson sought to make a will which she believed would give to the plaintiffs an equitable share of the joint property of their uncle and aunt, recognizing that by the instrument above referred to an equitable share had already been transferred to the other member of the household, the other niece, Mary Eva Grier.

It is a well-settled rule of law that a trust must be established by clear, unequivocal and indubitable evidence, especially where as in this case it is sought to be established by parol.

The payments made from the income of the transferred securities by the defendant to Mrs. Patterson do not evidence the creation of a trust or satisfy the requirement of the above stated rule. The payments thus made are entirely consistent with the absence of any legal obligation. A trust *ex maleficio* can be established only by evidence which is clear, definite and unequivocal in its character. *Ryder* v. *Ryder,* 244 Ill. 297. And there is no proof presented in this case which meets the requirements of this rule.

A trust such as is claimed by the plaintiffs can be declared or enforced only by satisfying the court by the degree of proof stated:

(1) That this was Mr. and Mrs. Patterson's actual purpose and intention in the premises;

(2) That the legal title to the securities was transferred to the defendant for this purpose; and

(3) That this transfer of the legal title was induced by and made in consideration of the defendant's promise to hold the property in trust for the purposes stated.

A failure of proof in any one of these three respects is fatal to the plaintiffs' case.

Despite the mass of testimony and the elaborate briefs and arguments of counsel the fundamental and controlling issue presented to the court for determination is therefore very simple.

The burden of proof rests upon the plaintiffs to establish the existence of the alleged trust by clear, convincing and unequivocal evidence, whether the trust be deemed an express trust, an implied trust or a constructive trust. The plaintiffs alleging the

existence of a trust in the face of a written instrument of transfer such as the instrument in evidence, which is absolute on its face, must establish their contention by such evidence, and where any kind of a trust is sought to be established by parol evidence a higher degree of proof than a mere preponderance of evidence is required. Trusts, 39 Cyc. 84, 85, 166–168.

No parol trust will be engrafted on a legal title which the instrument of conveyance makes absolute on its face unless with the greatest caution, and where the fraud necessary to create the trust is established by clear and convincing proof. *Brock* v. *Brock,* 90 Ala. 86; 9 L. R. A. 287; *Sherman* v. *Sandell,* 106 Cal. 373. There is no direct evidence to substantiate the plaintiffs' claim. The evidence offered to sustain the allegation of a trust is indirect, inferential and inconclusive, and opposed to it is the instrument itself in James S. Patterson's own handwriting, signed by himself and Mrs. Patterson, and witnessed by Jean Bell Grier. It contains no ambiguity, and is susceptible of no doubtful inference.

I am satisfied that Mr. and Mrs. Patterson intended to give the securities described in the instrument of transfer to the defendant absolutely, and for her own use, and did not intend to transfer to her a mere naked legal title, but the equitable title and entire beneficial interest in these securities for value received and in consideration of love and affection for her. There is no evidence of the commission of any fraud. The instrument referred to speaks for itself and is conclusive in defendant's favor. The defendant is therefore entitled to judgment in this action dismissing the plaintiffs' complaint upon the merits, with costs.

Judgment for defendant, with costs.