Pierson R. Hildreth, S.
This is a proceeding for the judicial settlement of a supplemental final account of the administratrix who is now accounting for additional assets received since settlement of a former account by decree dated May 16, 1960. The petition also asks that a trust be imposed upon certain real property of which record title is in decedent’s mother, that the committee of decedent’s mother be required to convey title to the estate, and that the property be ordered sold subject to a life estate in the mother.
Petitioner alleges that a close relationship existed between decedent and his mother, that in January, 1946 decedent made an oral agreement with his mother whereby he conveyed his fee interest in certain real property to her upon the understanding that she would hold title in trust for him and reconvey to him on his demand. It is further alleged that relying upon such agreement, decedent conveyed his remainder interest in the property to his mother by deed dated January 22, 1946 which deed contained no reference to any trust, but which was without consideration and not intended to be absolute. The property was never reconveyed during decedent’s lifetime. The record absolute fee title thereafter stayed in the mother’s name for the ensuing eight years of decedent’s life and was in her name when he died April 2, 1954. Decedent’s mother was adjudicated an incompetent September 6,1960. The property was in her name at that time. There is no evidence that anyone from 1946 until 1960 ever requested a reconveyance either to decedent while he lived or to his estate after death. The committee of the decedent’s incompetent mother denies the existence of any trust, and asserts that title is vested in her absolutely.
The evidence as to existence of such trust consists of certain deeds and the testimony of a single witness assuming that the testimony is not barred by section 353 of the Civil Practice Act, the witness being an attorney who was decedent’s friend and who advised him concerning the transactions involving the real property in question. Without the benefit of such testimony it is the opinion of the court that there is a complete failure of proof to establish any trust. Thus, it is necessary to consider whether the testimony is barred, and if it is not, whether the proof is sufficient to establish any trust. At the conclusion of the case, respondent moved to strike the testimony of the attorney-witness in respect to advice given decedent as bearing on the certain deeds from decedent to his mother on the ground that the witness was acting under a lawyer-client relationship, and to dismiss the petition on the ground that the proof failed to establish any agreement between the decedent and his mother *840 to reconvey which would create a trust. Decision was reserved on both motions.
The following appear to be the facts: In or prior to 1934, decedent owned a parcel of real property at Oakdale, Suffolk County, which will be called the “ cabin ” property, and he also owned the remainder interest in another parcel which will be called the “ main ” house the life interest in which was vested in his mother. Both had originally been owned by decedent’s father. It is the “ main ” house parcel which is the subject of this proceeding.
The witness, Mr. Tuck, is a prominent attorney practicing since 1922. He was a close friend of decedent. He also knew decedent’s mother well and had represented her on local matters. She had substantial income. She supplied decedent with money and apparently supported him, at least partially for he had no occupation or independent income of his own. In January, 1946 the decedent and Mr. Tuck were in Florida. They visited each other. Decedent had matrimonial problems with his first wife who had instituted an action against him for separation; he was in poor health still recovering from self-inflicted injuries, and found it difficult to manage his affairs from Florida. He was afraid the wife might recover a judgment against him for alimony which would be a lien upon his property. Under these general circumstances Tuck says that decedent discussed his affairs with him and specifically ‘ ‘ he asked me my opinion about the advisability of transferring the ‘ cabin ’ property to his mother ”. Tuck told him he thought it would be a good idea but that he would have to get permission from his mother to do it. Decedent said he would, and he did so for decedent then wrote Tuck “ Everything O. K. Received word from my mother and it will be alright to transfer same. Don’t you think it would be advisable to transfer the big place also, as that is in my name also ? ’ ’
Attorney Tuck then pursuant to such letter proceeded to prepare two deeds, one for the “ cabin ” property and one for the “main” house property conveying decedent’s interest in each to his mother. Tuck took the deeds to Florida, had decedent execute them and his office recorded them. After recording they were returned to Tuck’s office and he kept them ever since. He states he never delivered them physically to decedent’s mother, that no consideration was paid for the deeds, that he rendered no bill for his services, that he considered he was acting as a friend and not as decedent’s attorney, that he never discussed the transaction with decedent’s mother, and that he kept a file regarding them in his law office. In 1953 the “ cabin ” property *841 was reconveyed by decedent’s mother to decedent. The * ‘ main ’ ’ house remained in her name as stated.
We will first consider whether the testimony of the attorney-witness, Tuck, with respect to the communications of decedent to him concerning the deed transaction is barred under section 353 of the Civil Practice Act. In the opinion of the court, notwithstanding the statement of the attorney that he did not consider himself acting as decedent’s lawyer, the nature and effect of the legal transactions and of the advice given, the circumstances leading to the preparation of deeds, and the acts performed by the attorney for decedent combine to transcend what could properly be considered a mere personal, nonlawyer relationship in the matter and fully sustains the existence of an attorney and client relationship between decedent and Tuck with respect to the deed transaction. (Bacon v. Frisbie, 80 N. Y. 394.) The court is also of the opinion that the communications of the decedent to his attorney in this case were not confidential as between decedent and his mother.
Section 353 of the Civil Practice Act, prohibits an attorney from disclosing “ a communication, made by his client to him, or his advice given thereon, in the course of his professional employment ”. The purpose is to protect the client from communications to his attorney which the client intends to have kept confidential. (Matter of King v. Ashley, 96 App. Div. 143, affd. 179 N. Y. 281.) The privilege does not apply when two or more persons consult an attorney for their mutual benefit. (Doheny v. Lacy, 168 N. Y. 213; Hurlburt v. Hurlburt, 128 N. Y. 420.) And in such case the privilege cannot be invoked in litigation between them and strangers. (Wallace v. Wallace, 216 N. Y. 28.) In that case the court (p. 36) quotes from Wigmore, as follows: 16 ‘ There may be a relative, not an absolute, confidence. The chief instance occurs when the same attorney acts for two parties having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other.’ ” It is also stated in that case that if the evidence would have been competent in an action between the parties it will be equally competent in an action between the personal representatives of the parties when both of the parties were dead.
We therefore ask whether the communications of the deceased to his attorney were confidential as to his mother in the situation which exists in this case. It seems to the court that the cireum *842 stances surrounding the deed transactions were such as- bring this ease within the rules which apply when two persons both personally consult the same attorney. It seems to the court that decedent not only acted for himself but also for his mother in obtaining and then communicating her acquiescence to the transfer of the title to the attorney and in directing him to arrange for preparation, delivery and recording of the deeds so as to make a complete, valid and effectual transfer of his ownership to her. Through him the attorney was advised of her wishes just as definitely as if she had talked with the attorney herself. By such action decedent negatives all intent or purpose to have the disclosures to the attorney confidential as to his mother. Undoubtedly what decedent told his attorney was confidential and barred from disclosure as to a third party such as his then estranged wife. But here the disclosures to the attorney as to the transactions were in effect made by both the decedent and his mother, were made for the mother by the son. This is especially true with respect to all transactions occurring after he had spoken to her as to her willingness to accept the transfer.
If any one thing is clear from the evidence and justified by inferences, it is that decedent intended to and wished to divest himself of ownership and effectively transfer his title to his mother. The attorney was highly experienced in real estate matters. He knew how to accomplish that result and saw to it that it was done. He most certainly did not assist in consummating a void, fraudulent, illusory, or ineffective transfer of title. Before he would act, he was careful to make sure that the mother who was to be the grantee consented to the proposed transaction. The decedent was the intermediary. It is difficult for the court to believe that the attorney thought otherwise. If he had any doubts he would not have proceeded upon the son’s word in behalf of his mother, but would have contacted her himself. She was no stranger to him. (See Rosseau v. Bleau, 131 N. Y. 177.) For the above reasons the court rules that the communications made by decedent to Tuck were not confidential as to his mother, and that the attorney is not barred from disclosing the communications of the deceased to him concerning the deed transactions in this case. Respondent’s motion to strike such testimony is accordingly denied.
Next to consider is whether with the benefit of such testimony there is sufficient proof to establish any obligation to reconvey or impose a trust. The court thinks there is not. The proof is consistent with an absolute conveyance from the decedent as grantor to his mother as grantee. There is no direct evidence of any agreement whatever to hold iq trust or to reconvey either *843 property. The grantee held full title for the “main” house for eight years before decedent died, and for six years after death, during which periods there is not the slightest evidence that the grantee was under a duty to reconvey. It was inferred that since the “ cabin ” property was reconveyed, the “ main ” house should be. The inference could also be that if there had been any obligation to reconvey the “main” house, it would have been done at the same time that the ‘ ‘ cabin ’ ’ property was reconveyed. That it was not done could indicate that it was held absolutely. This is not a case where the mother as grantee sought or obtained any unfair advantage of her son, or is guilty of any fraud. One may speculate that perhaps if he had asked for a reconveyance, she would have given it. She might have refused. There is no evidence that when he divested himself of his remainder interest he did not do so completely so there would be no property of his on which his wife could obtain judgment lien. He may well have felt obligated to his mother because of the support and assistance she had given him.
To establish a trust by parol requires clear, convincing and unequivocal evidence especially if the trust is alleged in the face of written instrument of transfer which is absolute on its face. (Reppert v. Hunter, 106 Misc. 407, affd. 191 App. Div. 936, appeal dismissed 229 N. Y. 608.)
Petitioner and others who seek a reconveyance here contend that there is no sufficient proof of delivery of the deed from the decedent grantor to his mother as grantee. The fact of recording raises a presumption of delivery to the grantee. (Munoz v. Wilson, 111 N. Y. 295.) There is not sufficient evidence here to overcome the presumption. On the contrary, it is the opinion of the court that the evidence not only strengthens the presumption, but shows delivery in fact. The decedent grantor intended the deed to be effective as soon as he signed it and gave it to his attorney for recording. He intended to part with title. He had contacted his mother grantee for her acquiescence, and acted for her as well as himself to consummate the transaction. The facts thus indicate delivery in fact. The presumption is also more appropriate here because of the subsequent incompetency of the grantee, thus making the situation analagous to one where the death of the grantee has occurred. (Buszozak v. Wolo, 125 Misc. 546.) The court finds that delivery is established and that the grantor conveyed full title to the grantee.
Accordingly, insofar as the petition seeks to impress a trust upon the real property it is denied and the petition to that extent is dismissed. Incorporate provisions accordingly in decree to be submitted upon settlement of the account.